# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

ZACHARY BREVARD,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:19-cv-00578

RACING CORPORATION OF WEST VIRGINIA,

        Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court is a Partial Motion to Dismiss by Defendant Racing Corporation of West Virginia d/b/a Mardi Gras Casino Resort ("Mardi Gras"). (ECF No. 30.) For the reasons discussed more fully herein, the motion is **GRANTED**.

## I.    BACKGROUND

The following facts are drawn from the operative complaint and the documents attached thereto. *See Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (providing that "a court may consider documents attached to the complaint pursuant to Rule 10(c)" without converting a motion to dismiss into one for summary judgment) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Additionally, the Court will consider the pertinent documents attached to Mardi Gras' motion and Plaintiff's response that are authentic and integral to the complaint. *See id.* (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009)).

Plaintiff Zachary Brevard ("Plaintiff") is an African American male, born in 1964, and a former employee of Mardi Gras. (ECF No. 9 at ¶ 7 (Am. Compl.).) Plaintiff was hired in September 2008 and was, subsequently, promoted to the Table Games Pit Boss in July 2010. (*Id.* at ¶¶ 16, 18.) Plaintiff alleges that, during the course of his employment with Mardi Gras, he suffered from racial harassment and discrimination by Mardi Gras' customers. (*Id.* at ¶¶ 21–22, 28, 33.) Specifically, he contends that customers "repetitively called" him racial slurs and demonstrated "physically threatening conduct" or "threatening behaviors" towards him. (*Id.* at ¶¶ 28, 33–34.) Plaintiff further alleges that Mardi Gras was aware of this harassment but did nothing to stop it. (*Id.* at ¶¶ 22, 27–28, 33.) He also claims that he was the "object" of "racially charged and biased, derogatory working conditions, and negative stereotype-based conduct" while he was employed with Mardi Gras. (*Id.* at ¶ 31.) In addition, he generally claims that he "was not afforded the same benefits" as other employees, "including access to a break room for managers." (*Id.* at ¶ 29.)

On May 26, 2017, Plaintiff was involved in a physical altercation with a customer after the customer used a racial slur and became aggressive towards Plaintiff. (*Id.* at ¶¶ 34–37). Due to the customer's "aggressive conduct," Plaintiff "attempted to diffuse the situation" and struck the customer in self-defense. (*Id.*) Following the incident, Plaintiff's employment was suspended on May 26, 2017, and terminated on June 2, 2017, for violating Mardi Gras' "workplace violence policy." (*Id.* at ¶¶ 16, 23.) Plaintiff claims that the termination of his employment based on the Mardi Gras' workplace policy was pretext for discrimination on the basis of his race, color, and age, and retaliation for his reporting of prior harassment by customers and complaining about the lack of proper employee evaluations. (*Id.* at ¶¶ 26, 28, 51, 57.)

Plaintiff filed a claim with the West Virginia Human Rights Commission ("WVHRC") on July 3, 2017, asserting that Mardi Gras discriminated against him because of his race. (*Id.* at ¶ 42; ECF No. 9-8 (WVHRC Complaint).) On August 31, 2018, after concluding its investigation, the WVHRC issued a "No Probable Cause Determination" along with a "Final Determination and Dismissal Order" and a "Notice of Right to Sue." (ECF Nos. 30-1, 30-2, 30-3.) On May 8, 2019, the United States Equal Employment Opportunity Commission ("EEOC") adopted the findings of the WVHRC and notified Plaintiff of his right to sue within 90-days of receiving the notice. (ECF No. 9 at ¶ 43; ECF No. 9-1 (EEOC Dismissal and Notice).)

Based on these facts, Plaintiff filed his initial complaint, *pro se*, on August 6, 2019, alleging that Mardi Gras discriminated against him because of his race. (ECF No. 2.) After retaining counsel, Plaintiff filed an amended complaint, asserting seven additional claims. (ECF No. 9.) The claims asserted in Plaintiff's Amended Complaint include the following: violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), for discrimination on the basis of Plaintiff's race and color (Counts I and II); violations of the Age Discrimination in Employment Act of 1967 ("ADEA") (Count III); violations of the West Virginia Human Rights Act ("WVHRA") (Count IV); retaliation under Title VII, the ADEA, and the WVHRA (Count V); common law claims for Intentional/Reckless Infliction of Emotional Distress (Count VI); Breach of Employment Agreement, Terms and Conditions (Count VII); and a violation under the West Virginia Wage Payment and Collection Act ("WVWPCA") based on the alleged breach of an employment agreement (Count VIII). On November 25, 2019, Mardi Gras filed the present partial motion to dismiss. (ECF No. 30.) Plaintiff timely responded to the motion on December

9, 2019, (ECF No. 34), and Mardi Gras filed a timely reply on December 16, 2019, (ECF No. 35). As such, the motion is ripe for adjudication.

## II.    *LEGAL STANDARD*

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"  *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555; *see also Ms. King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*,

556 U.S. at 679. The court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [the court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III. DISCUSSION

Mardi Gras moves to dismiss part of Plaintiff's claim under Counts I and II and all of Plaintiff's remaining claims under Counts III through VIII. The parties' arguments with respect to each count are addressed, in turn, below.

### A. Failure to Exhaust Administrative Remedies – Counts I, II, III, and V

Plaintiff asserts claims for race and color discrimination under Title VII in Counts I and II, age discrimination under the ADEA in Count III, and retaliation under Title VII and the ADEA in Count V of the Amended Complaint. Before filing suit under Title VII and the ADEA, a party alleging discrimination must exhaust their administrative remedies. *See Love v. Pullman Co.*, 404 U.S. 522 (1972); *Melendez v. Sebelius*, 611 F. App'x 762, 763 (4th Cir. 2015) (requiring exhaustion under Title VII); *Nesbit-Harris v. Jackson*, No. 3:07-696, 2008 WL 2329173, at *3 (E.D. Va. June 3, 2008) (holding that the ADEA requires exhaustion of administrative remedies). The purpose of the exhaustion requirement is to ensure "that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*,

429 F.3d 480, 491 (4th Cir. 2005) (citing *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 (4th Cir. 1981)). To meet this procedural requirement, the aggrieved individual must file a charge with the EEOC within 180 days of the alleged unlawful practice. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). Alternatively, an individual may fulfill this obligation by filing a charge with a state or local agency that has a "worksharing" agreement with the EEOC. *See EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 112 (1988) (citing 42 U.S.C. § 2000e–8(b), which authorizes the EEOC to "enter into written agreements" with state and local agencies to promote "effective enforcement" of employment discrimination laws). In such case, the charge must be filed within 300 days. *See Haught v. Louis Berkman, LLC*, 377 F. Supp. 2d 543, 552 (N.D. W. Va. 2005) (citing *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980)).

In West Virginia, the WVHRC is a Fair Employment Practices Agency ("FEPA") under 29 C.F.R. § 1601.74 and has been operating under a worksharing agreement with the EEOC since 1983. *See Petrelle v. Weirton Steel Corp.*, 953 F.2d 148, 151 (4th Cir. 1991). An individual alleging employment discrimination in this state must, therefore, file a charge with the EEOC within 300 days of the alleged unlawful practice. *See Haught*, 377 F. Supp. 2d at 552; *see also Mullins v. Charleston Stamping & Mfg., Inc.*, No. 2:10-cv-0792, 2011 WL 2471014, at *2 n.1 (S.D. W. Va. June 20, 2011) (citing *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 642–43 n.13 (7th Cir. 2004) for the principle that "in a dual-filing system the filing of a charge with the state agency is also considered as a filing in the EEOC."). Failure to timely file a charge of discrimination with the EEOC is an appropriate basis for dismissal. *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999). Further, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by

6

reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).

Here, there is no dispute that Plaintiff timely filed a charge with the WVHRC in July of 2017, which was dually filed with the EEOC. (ECF No. 9-8 (WVHRC Charge); ECF No. 9-9 (EEOC Dual Filing Notice).) Instead, Mardi Gras argues that Plaintiff he cannot pursue his claims for color discrimination, age discrimination, and retaliation in federal court because his administrative charge was based solely on a race discrimination claim. (ECF No. 31 at 5–13.) Plaintiff defends that Mardi Gras and the WVHRC and EEOC were on sufficient notice of the breadth of his claims. In so arguing, he points to his "Employment and Pre-Complaint Background Form" filed with the WVHRC, which he claims details the alleged discrimination and retaliation he endured throughout his employment. (ECF No. 34 at 7–8.) He also claims that his response to Mardi Gras' position statement with the WVHRC provided further details about his claims for discrimination based on color and age and retaliation. (*Id.*)

However, when determining whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, this Court "may look *only* to the charge filed with that agency." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (emphasis added); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (stating that a "charge frames the scope of future litigation."). Although "EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," the Court is "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). Accordingly, the Court will not consider these extraneous documents.

In his charge, Plaintiff marked only race as the alleged unlawful practice. (ECF No. 9-8.) He did not check any of the boxes for color, age, or reprisal. Further, the narrative portion explaining his charge only references race discrimination. Nowhere in the narrative section did Plaintiff allege that he was subjected to discrimination because of his color, age, or any other reason. Likewise, he did not mention reprisal or retaliation anywhere in the text of his charge. Nonetheless, in Plaintiff's view, his claims for color and age discrimination as well as retaliation are "reasonably related" to his race discrimination charge and, thus, should be deemed exhausted.

The Fourth Circuit's decision in *Chacko v. Patuxent Inst.*, 429 F.3d 505 (4th Cir. 2005) provides guidance on determining whether claims are reasonably related. In *Chacko*, the plaintiff's administrative charges alleged that his supervisors discriminated against him on the basis of sex and national origin, that his supervisors had subjected him to hostile treatment, and that his supervisors demoted him in retaliation for filing other charges. *Id.* at 507. The thrust of the plaintiff's judicial complaint, however, alleged that his "coworkers continually made derogatory national-origin remarks to him over the course of his twenty-year career, and that supervisors did not discipline these coworkers, laughed at their comments, and may have joined them." *Id.* at 510–11. The Fourth Circuit held that the plaintiff had failed to exhaust his administrative remedies because "his administrative charges reference[d] different time frames, actors, and conduct than the central factual allegations in his formal suit." *Id.* at 506.

In this case, while the administrative charge and the Amended Complaint involve the same time frame, they implicate different actors and involve distinct conduct. First, Plaintiff's charge alleges harassment by customers but fails to mention that supervisors and management discriminated against him as he alleges in the Amended Complaint. Also, none of the alleged acts

8

of harassment or discrimination referenced in the charge involved Plaintiff's color or age. Rather, the confrontations described in Plaintiff's administrative charge solely involved racial slurs and insults. Similarly, while the administrative charge notes that Plaintiff informed Mardi Gras about the racist conduct he was subjected to, there are no assertions that Plaintiff complained about Mardi Gras' employee evaluation procedures or that his complaints led to his termination.

Furthermore, neither color and age discrimination nor retaliation would have developed from a reasonable investigation of Plaintiff's race discrimination claim. The law is clear that color discrimination and race discrimination are distinct claims based on separate protected classes. In *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124 (4th Cir. 2002), the Fourth Circuit explained that "[c]olor discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination . . . ." *Id.* at 132 n.5. In that case, the *pro se* plaintiff alleged race discrimination in his administrative charge but, subsequently, asserted discrimination based on his color, race, and sex, and retaliation in a civil suit. The court dismissed these claims, which exceeded the scope of the EEOC charge, reasoning that an administrative investigation of retaliation and color and sex discrimination "could not reasonably be expected to occur in light of [the plaintiff's] sole charge of race discrimination . . . ." *Id.* at 133.

Similarly, "Title VII and ADEA claims arise from completely distinct statutory schemes" and, thus, require different allegation. *Evans*, 80 F.3d at 963 (4th Cir. 1996) (dismissing age discrimination claim where EEOC charge only alleged sex discrimination); *see also Miles*, 429 F.3d at 491–92 (affirming the district court's dismissal of plaintiff's retaliation claim because it was not included in her EEOC charge); *Sloop*, 198 F.3d at 149 (finding no administrative exhaustion of retaliation claim where plaintiff checked only the box for age). In light of this

Fourth Circuit precedent, this Court finds that Plaintiff's claims for color discrimination, age discrimination, and retaliation do not flow from his race discrimination claim. Accordingly, Plaintiff has failed to exhaust his administrative remedies with regard to retaliation and discrimination based on color and age. As a result, these claims are dismissed.

### B. *Statute of Limitations – Counts IV and V*

Next, Mardi Gras argues that Plaintiff's claims under the WVHRA in Counts IV and V for wrongful termination based on his race, color and age as well as retaliation are barred by the applicable two-year statute of limitations. (ECF No. 31 at 13.) The applicable limitations period for bringing a claim under the WVHRA is two years. *See Metz v. E. Associated Coal, LLC*, 799 S.E.2d 707, 710 (W. Va. 2017) (applying a two-year limitations period found in W. Va. Code § 55-2-12 to WVHRA based claims); *Price v. Region 4 Planning & Dev. Council*, No. 2:16-cv-1529, 2019 WL 1869961, at \*14 (S.D. W. Va. Apr. 25, 2019) (same). Here, Plaintiff's employment with Mardi Gras was terminated on June 2, 2017, (ECF No. 9-4 (Termination Letter)), requiring any lawsuit asserting claims under the WVHRA to be filed by June 2, 2019. Plaintiff filed the instant action on August 6, 2019, more than two months after the limitations period elapsed for any claim under the WVHRA.

Plaintiff concedes that these claims fall outside the statute of limitations. However, he contends that his original attorney either failed to timely file his claims or advise Plaintiff of his intent not to pursue them to allow Plaintiff to seek other counsel or proceed *pro se* within the applicable time period. He, therefore, asks this Court to equitably toll the statute of limitations. (ECF No. 34 at 13.) Mardi Gras counters that the doctrine of equitable tolling cannot save

Plaintiff's time barred claims because "Mardi Gras did not engage in any type of misconduct to prevent him from timely filing this action." (ECF No. 35 at 9–10.)

Mardi Gras relies on *English v. Pabst Brewing Co.*, 828 F.2d 1047 (4th Cir. 1987) for the proposition that the doctrine of equitable tolling only "applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *Id.* at 1049 (citations omitted). However, the Fourth Circuit expounded on this notion in *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). There, the court held that equitable tolling applies not only when a plaintiff is "prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant" but also when "extraordinary circumstances beyond [the] plaintiff['s] control made it impossible to file the claims on time." *Id.* at 330; *Seacrist v. Metro. Sec. Servs.*, No. 2:14-cv-24372, 2015 WL 1527763 (S.D. W. Va. Apr. 3, 2015) (noting that tolling applies under these two circumstances). For instance, federal courts have allowed equitable tolling under the "extraordinary circumstances" exception where a plaintiff has filed a defective but otherwise timely pleading. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 n.3 (1990) (citing cases).

Nonetheless, equitable tolling "is a rare remedy available only where the plaintiff has "exercise[d] due diligence in preserving [his] legal rights." *Cruz v. Maypa*, 773 F.3d 138, 145–46 (4th Cir. 2014) (citation and quotation omitted). Courts generally hold that an attorney's mistake in calculating the statute of limitations is not a valid basis for equitable tolling. *See id.* at 330–31 (citing cases and stating, "we cannot say that the lawyer's mistake in interpreting a statutory provision constitutes that 'extraordinary circumstance' external to [plaintiff] that would justify equitable tolling"); *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 227 (4th Cir. 2005); *Irwin*, 498 U.S. at 96. "Former counsel's errors are attributable to [Plaintiff] not because he

participated in, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency." *Rouse v. Lee*, 339 F.3d 238, 249 (4th Cir. 2003). Therefore, to the extent Plaintiff asserts that his former counsel failed to timely file his claims, his counsel's mistake does not warrant equitable tolling. However, extraordinary circumstances may be demonstrated by a showing of "an extraordinary failure by the attorney to provide reasonably competent legal work, to communicate with his client, to implement his client's reasonable requests, to keep his client informed of key developments of their cases, or" by abandoning his client. *United States v. Oriakhi,* 394 F. App'x 976, 977 (4th Cir. 2010) (citing *Holland v. Florida*, 130 S.Ct. 2549, 2562–65 (2010)).

In support of his equitable tolling claim based upon his former counsel's misconduct, Plaintiff submitted a letter dated November 25, 2019, that his former counsel, Michael Clifford, sent to his current counsel. (ECF No. 34-3.) In that letter, Mr. Clifford states that he has represented Plaintiff *pro bono* in a couple of matters, including a separate civil suit that was set for trial that following January. He goes on to state that he is "not wasting another minute of [his] time or any further expense on [Plaintiff's] case." Mr. Clifford notes that Plaintiff extracted copies of his records from his office and, further, extended Plaintiff's new counsel the opportunity to come to his office and copy Plaintiff's entire file. However, this letter does not reference the instant matter involving Mardi Gras. Nor does it suggest that Mr. Clifford failed to inform Plaintiff of the deadline for filing his claims or that he failed to comply with Plaintiff's request to file such claims. The letter simply establishes that Plaintiff and Mr. Clifford terminated their attorney-client relationship. There is no indication that Plaintiff was prevented from filing his action at an earlier date nor does Plaintiff identify any conduct from Mr. Clifford that prevented

him from doing so. *See Harris*, 209 F.3d at 330 (noting that equitable tolling is "reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result."). Accordingly, Plaintiff is not entitled to equitable tolling, and his claims under the WVHRA are time barred by the statute of limitations.

### C. Continuing Tort and Immunity under the Workers' Compensation Act – Count VI

Similarly, Mardi Gras argues that Plaintiff's common law tort claim for intentional or negligent infliction of emotional distress in Count VI is barred by the two-year statute of limitations. (ECF No. 31 at 14.) Plaintiff's claim, which he suggests in his response is only one for intentional infliction of emotional distress ("IIED"), is governed by a two-year statute of limitations under West Virginia Code § 55-2-12(b). *See* Syl. Pt. 5, *Courtney v. Courtney*, 437 S.E.2d 436, 437 (W. Va. 1993) (holding that "[a] claim for severe emotional distress arising out of a defendant's tortious conduct is a personal injury claim and is governed by a two-year statute of limitations under W. Va. Code, 552-12(b)."); *Evans v. United Bank, Inc.*, 775 S.E.2d 500, 508 n.8 (W. Va. 2015) (holding, under W. Va. Code § 55-2-12, that a two-year statute of limitations applies to claims for IIED and NIED). As stated above, Plaintiff was terminated on June 2, 2017, and he asserted an IIED claim in his Amended Complaint on August 26, 2019, more than two years after the limitations period commenced. Therefore, unless some other rule or theory applies, Plaintiff's IIED claim cannot be based on anything that occurred before August 26, 2017.

Plaintiff attempts to avoid the statute of limitations under the equitable tolling doctrine, but for the reasons explained above equitable tolling does not apply here. *See supra* at 11–13. He also attempts to use the continuing tort doctrine to reach his claim back before August 26, 2017.

In particular, he argues that Mardi Gras' wrongful conduct continues to this day because it has not corrected an inadequate investigation of the events that led to Plaintiff's termination. (ECF No. 34 at 15.) In West Virginia, "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." *Roberts v. W. Va. Am. Water Co.*, 655 S.E.2d 119, 124 (W. Va. 2007). The West Virginia Supreme Court of Appeals elaborated:

> [T]he distinguishing aspect of a continuing tort with respect to negligence actions is continuing tortious conduct, that is a continuing violation of a duty owed the person alleging injury, rather than continuing damages emanating from a discrete tortious act. It is the continuing misconduct which serves to toll the statute of limitations under the continuing tort doctrine.

*Id.*

The primary allegations in Plaintiff's Amended Complaint concern discriminatory conduct and his discharge on June 2, 2017. While Plaintiff attempts to characterize Mardi Gras' actions as a continuing tort, his position confuses an act causing injury with an injury that continues because of a failure to remedy it. The Court of Appeals for the District of Columbia considered this same issue in *Fitzgerald v. Seamans*, 553 F.2d 220 (D.C. Cir. 1997), where a plaintiff's employment was terminated, and he then applied for reinstatement and sued for damages. The *Fitzgerald* court rejected the application of the continuing tort doctrine, stating that "the mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong which tolls the statute of limitations, for that is the purpose of any lawsuit and the exception would obliterate the rule." *Id.* at 230. Despite the allegation that Mardi Gras has not corrected its pre-discharge investigation, Mardi Gras has no legal obligation to take affirmative action to rectify any alleged misconduct after Plaintiff's termination. Absent any allegation of a repeated, wrongful act that

initially occurred within the statutory period to support an emotional distress claim, the continuing tort exception is inapplicable, and the Court so holds here.

Apart from the statute of limitations, Mardi Gras argues that Plaintiff would otherwise be precluded from asserting an IIED claim based on the immunity and exclusivity provisions of the West Virginia Workers' Compensation Act ("WCA"). *See* W. Va. Code § 23-2-6. (ECF No. 31 at 15–16.) The WCA is "the exclusive remedy as against an employer for workplace injuries or death and provides general immunity from suit for such injuries or death to qualifying employers." *Young v. Apogee Coal Co.*, 753 S.E.2d 52, 55 (W. Va. 2013); W. Va. Code § 23-2-6 (providing that an employer in compliance with the Act "is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring"); *Bias v. E. Associated Coal Corp.*, 640 S.E.2d 540, 544 (W. Va. 2006) (stating that the WCA creates "sweeping immunity" for employers for all tort actions by employees for injuries occurring "in the course of and resulting from employment."); *Wisman v. Rhodes*, 447 S.E.2d 5, 7 (W. Va. 1994) (explaining that the purpose of the WCA "is to replace the common-law tort claims and defenses between or among employers and employees with the no-fault exclusive remedy of workers' compensation."). Consequently, this Court and the West Virginia Supreme Court of Appeals has established that the immunity provided by the WCA encompasses an action for negligent or intentional infliction of emotional distress. *See Fugate v. Frontier W. Va., Inc.*, No. 2:17-cv-00559, 2017 WL 3065216, at *5 (S.D. W. Va. July 19, 2017); *Bias*, 640 S.E.2d at 544 (holding that WCA immunity precludes a workplace NIED claim); *Miller v. City Hosp., Inc.*, 475 S.E.2d 495, 501–02 (W. Va. 1996) (finding plaintiff's tort of outrage is barred by the WCA's immunity provision).

An employer's immunity under the WCA is not absolute, however. Immunity may be lost if an employer (1) defaults in payments required by the WCA or otherwise falls out of compliance with the WCA, (2) acts with "deliberate intent" to injure the employee, or (3) "in such other circumstances where the Legislature has by statute expressly provided an employee a private remedy outside the workers' compensation system." Syl. Pt. 2, *Bias*, 640 S.E.2d at 540 (citing W. Va. Code § 23-4-2(d)(2)). Plaintiff does not contest that his claim is barred by the immunity and exclusivity provisions of the WCA. Rather, he argues that his IIED claim constitutes a "deliberate intention" claim within the meaning of W. Va. Code § 23-4-2(d)(2)(A). (ECF No. 34 at 16.) With respect to the pleadings surrounding Count VI, the Amended Complaint alleges:

> 87. The plan and/or decision to terminate Plaintiff's employment and to include pretextual justifications for the termination "for cause" as well as other acts and omissions set out herein constituted intentional/reckless infliction of emotional distress.

> 90. These and other intentional and reckless actions by Defendant in regard to Plaintiff's employment and the termination thereof were outrageous and exceed the bounds of decency, and were committed intentionally and/or recklessly and with the knowledge that such conduct was increasingly wearing upon Plaintiff, was wrongful, and would result in the infliction of emotional distress upon Plaintiff.

> 91. Plaintiff suffered and continues to suffer emotional distress as a direct and proximate result of Defendant's conduct.

(ECF No. 9 at ¶¶ 87, 90, 91.) Although Plaintiff is not required to use any magic words to adequately plead a deliberate intent claim, the Amended Complaint fails to plead several core elements, including that Mardi Gras "acted with a consciously, subjectively and deliberately formed intention" to cause Plaintiff's injury. W. Va. Code § 23-4-2(d)(2)(A). At best, Plaintiff's claim alleges that Mardi Gras purposefully terminated Plaintiff's employment. Critically, it fails to allege that such action was undertaken with the specific intent of causing him injury.

Allegations of "(i) [c]onduct which produces a result that was not specifically intended; (ii) conduct which constitutes negligence, no matter how gross or aggravated; or (iii) willful, wanton or reckless misconduct" are insufficient." W. Va. Code § 23-4-2(d)(2)(A). The Amended Complaint therefore falls short of the specific intent necessary to satisfy the deliberate intent exception to workers' compensation immunity. *See Tolliver v. Kroger Co.*, 498 S.E.2d 702, 716 n.26 (W. Va. 1997) (failure to plead deliberate intention exception to WCA immunity resulted in dismissal of plaintiff's common law tort claims for assault, battery and IIED).

### D. Breach of Employment Agreement – Count VII

Turning to Count VII, Plaintiff alleges that he was "promoted under an employment agreement dated on or about July 15, 2010." (ECF No. 9 at ¶ 17.) Plaintiff then asserts that by "wrongfully" terminating his employment, Mardi Gras breached his employment agreement, including the terms and conditions under which he could be discharged. (*Id.* at ¶ 94.) In addition, Plaintiff claims that Mardi Gras breached the duty of good faith and fair dealing as implied in the employment agreement or related terms and conditions. (*Id.* at ¶ 95.) Mardi Gras contends that there is no employment contract between Mardi Gras and Plaintiff to support Plaintiff's claims for breach of an employment agreement and the covenant of good faith and fair dealing. Mardi Gras argues that Plaintiff's claim is based on an offer letter, which contains at-will disclaimers and does not specify any duration of employment. (ECF No. 31 at 16–19.)

Plaintiff appears to have abandoned his claim that the offer letter constituted an employment agreement as he has failed to address Mardi Gras' arguments in his response brief. *See Taylor v. Clay Cty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, at *2 (S.D. W. Va. Feb. 24, 2020) (finding the plaintiff abandoned their claims because they failed to address the

defendants' arguments); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion ... can indicate that the non-moving party concedes the point or abandons the claim.").   Nonetheless, had Plaintiff pursued this claim, it would be to no benefit.

To state a breach of contract claim under West Virginia law, a plaintiff must allege facts sufficient to support "the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Kennedy v. BAC Home Loans Servicing, LP*, No. 3:13-cv-11401, 2013 WL 5274365, at *6 (S.D. W. Va. Sept. 18, 2013) (citing *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr.*, *Inc.*, 681 F. Supp. 2d 694, 714 (S.D. W. Va. 2009)).   Here, the employment agreement referenced in Plaintiff's Amended Complaint is an offer letter, dated, July 15, 2010, wherein Mardi Gras offered Plaintiff the position of Table Games Pit Boss and gave him seven days to accept that offer.   (ECF No. 9-3 (Offer Letter).)   The offer letter does not specify any duration of employment and contains the following at-will disclaimer:

> Your employment with our Company is "at will," which means that either you or the Company may terminate the relationship at any time.   As such, your employment with the Company is at-will and neither this nor any other oral or written representations may be considered a contract for a specific period of time.

(*Id.*)   This express language in the offer letter directly contradicts Plaintiff's characterization of the offer letter as creating a binding and enforceable employment agreement.   Thus, it cannot form the basis of Plaintiff's breach of contract claim.   *See Chand v. Merck & Co., Inc.*, No. 19-0286, 2019 WL 3387056, at *9 (E.D. Pa. July 26, 2019) (dismissing claims for breach of contract and good faith and fair dealing based on an offer letter, which disclaimed any contractual relationship, and reasoning that "such an offer letter is 'part of the hiring process, and [i]s not an enforceable

18

contract.'") (citation omitted); *Godfrey v. Mastec, Inc.*, No. 1:15-cv-409, 2015 WL 7570209, at *4–5 (S.D. Ohio Nov. 25, 2015) (dismissing breach of contract claim based on offer letter which included an at-will disclaimer and did not provide any specific duration for plaintiff's employment).

Apparently retreating from the argument that the offer letter constituted an employment contract, Plaintiff advances a new argument that the "zero tolerance" policy for discrimination or harassment in Mardi Gras' Employee Handbook created a unilateral contract that was breached. (ECF No. 34 at 18–19.) West Virginia adheres to the employment at-will doctrine, which provides that an employee can be discharged "at any time, with or without cause." *Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 717–18 (W. Va. 2001). Although there is a strong presumption in West Virginia that all employment is at-will, an employee handbook can form the basis of a unilateral employment contract and rebut that presumption "if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons." *Edmonds v. Altice Tech. Servs. US LLC*, 413 F. Supp. 3d 488, 496 (S.D. W. Va. 2019) (citing *Cook v. Heck's Inc.*, 342 S.E.2d 453, 459 (W. Va. 1986)). On the other hand, "'[n]o unilateral contract arises merely by the fact that [the employer] has alerted its employees that certain conduct may form the basis of a discharge.'" *Id.*

Plaintiff alleges that the anti-discriminatory and anti-harassment policy in Mardi Gras' Employee Handbook creates a unilateral, contractual obligation to him. In *Edmonds*, this Court addressed similar anti-discrimination policies contained in an employee handbook and found that they do not create a "promise of job security:"

> Here, plaintiff alleges that defendant's handbook provides for the "protection of men and women who are disabled," as it is "against Defendant's policies for a man

19

or a woman to be discriminated against . . . due to their disability," and that the handbook also states that employees "cannot be retaliated against for disability." While these provisions do serve as anti-discrimination policies, they do not individually or collectively constitute a sufficiently definite promise not to discharge except for specified reasons.

*Id.* (citations omitted).   As in *Edmonds*, Plaintiff does not allege nor do the anti-discrimination and anti-harassment provisions contained in Mardi Gras' Employee Handbook exhibit a definite promise that would alter the at-will nature of his employment.

In West Virginia, "[a]n employer may protect itself from being bound by any and all statements in an employee handbook by placing a clear and prominent disclaimer to that effect in the handbook itself."   Syl. Pt. 5, *Suter v. Harsco Corp.*, 403 S.E.2d 751 (W. Va. 1991). Significantly, Mardi Gras' Employee Handbook contains two such prominent at-will employment disclaimers:

> THE INFORMATION AND POLICIES SET FORTH IN THIS HANDBOOK ARE NOT A CONSIDERATION OF EMPLOYMENT AND THE LANGUAGE IS NOT INTENDED TO CREATE OR BE CONSIDERED AN EMPLOYMENT CONTRACT BETWEEN [MARDI GRAS] AND ITS EMPLOYEES.
> . . .
> Since employment with [Mardi Gras] is based on mutual consent, both the employee and [Mardi Gras] have the right to terminate employment at will, with or without cause, at any time.

(ECF No. 9-7 at 6, 51 (Employee Handbook).)   These two disclaimers preserve Plaintiff's at-will employment and disclaim any implied promise that the handbook might otherwise create. Accordingly, the employee handbook cannot support a claim for breach of an employee agreement.

Additionally, because West Virginia does not recognize a stand-alone claim for breach of the covenant of good faith and fair dealing without an independent breach of contract claim, that claim also fails as a matter of law.   *See Evans*, 775 S.E.2d at 509 (affirming dismissal of claim alleging breach of the covenant of good faith and fair dealing in absence of express breach of contract

20

claim); *Powell v. Bank of Am., N.A.*, 842 F. Supp. 2d 966, 981 (S.D. W. Va. 2012) (noting that claims for breach of the implied covenant of good faith and fair dealing must be predicated on a breach of contract and citing cases).

### E. Wage Payment and Collection Act – Count VIII

In Count VIII of the Amended Complaint, Plaintiff claims that Mardi Gras is liable under the West Virginia Wage Payment and Collection Act ("WPCA") based on an alleged "breach of the employment agreement" and for failing to "remit to Plaintiff his termination payments." (ECF No. 9 at ¶¶ 99–100.) As discussed above, Plaintiff abandoned his claim for breach of an employment agreement. *See supra* at 17–18. Therefore, this abandoned claim cannot be used to support his purported WPCA claim.

To the extent Plaintiff's WPCA claim is not based on his alleged employment agreement, Mardi Gras contends that this claim fails to meet the plausibility requirements under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In particular, Mardi Gras argues that "Plaintiff has not pled what he was supposed to be paid or if that allegedly failed payment was late under the WPCA." (ECF No. 35 at 19–20.) Mardi Gras also notes that, although the Amended Complaint refers to "termination pay," Plaintiff does not explain what termination pay is and what source confers him with a right to such payment. (*Id.* at 20.) The Court agrees that the Amended Complaint offers no factual support for Plaintiff's conclusory assertions and does not satisfy the plausibility standard under Rule 12(b)(6). Accordingly, Plaintiff's claim based on violations of the WCPA is dismissed for failure to state a claim upon which relief can be granted.

*IV.    CONCLUSION*

For the foregoing reasons, Mardi Gras' Partial Motion to Dismiss, (ECF No. 30), is **GRANTED**. The Court **DISMISSES** part of Counts I and II insofar as these counts claim discrimination on the basis of Plaintiff's color. Further, the Court **DISMISSES** all of Counts III, IV, V, VI, VII, and VIII.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    April 13, 2020

_____

THOMAS E. JOHNSTON, CHIEF JUDGE